The next case we're going to hear is United States v. Boccone and Ms. Burnham, whenever you're ready we'll hear from you. May it please the court. Mr. Brown spent two and a half years working as a nurse practitioner at a pain management clinic in Virginia. During that time he of course wrote numerous prescriptions for pain medication. He was charged with and convicted of unlawful distribution based on three out of all of those prescriptions. But because the government simply ignored an essential element of that offense, his conviction cannot stand. Charles Brown was registered to prescribe controlled substances, therefore it was not a crime every time he signed a prescription. Under the Controlled Substances Act and the applicable regulation, dispensing the medications he prescribed is not illegal when a medical professional does so through a prescription issued for a legitimate medical purpose within the usual course of that individual practitioner's professional practice. Accordingly, this court has required that to convict a medical professional for writing a prescription, the government must prove beyond a reasonable doubt that that practitioner did not have a good faith belief that the prescription was for legitimate medical purposes in the usual course of his professional practice or that it was within the bounds of medical practice. Therefore, to convict Mr. Brown there needed to be evidence that he was acting outside the usual course of his practice as a nurse practitioner when he issued those three prescriptions. But as the government agrees, it offered evidence only for the standard of a physician, not for a nurse practitioner, even though no physician was even charged in this case. And then the government held Mr. Brown to that standard of a physician. Virginia law, however. What was that standard? The standard for a physician was the standard that the government's expert testified to. She stated that a physician needs to review prescriptions, needs to monitor the prescriptions that are being given, particularly those that are like the ones Mr. Brown was convicted of prescribing, opioid prescriptions. But Mr. Brown... That's not a standard to review them. What's the standard to review them for what? To... Well, there's a number of components. One would be you need to review them to make sure that they're being taken appropriately. There's urine screens that are done. Would Mr. Brown have to do all that? Mr. Brown... If he's going to be prescribing, if he prescribes and is authorized to prescribe, shouldn't he be sure that the medicine is being used appropriately, screening is done, urine test is done, and so forth? Yes, Your Honor, under the supervision of a physician. I know, but set aside the physician. I mean, we have a lot of instances where the physician either was very callous or wasn't, was involved in a most peripheral manner. Doesn't the nurse practitioner have a duty, a medical duty to the patient? Yes, Your Honor, and this is why... What's the duty? The duty is to comply with what he has a good faith understanding is within the scope of medical practice. Therefore, Mr. Brown, when he was prescribing, he was doing so under the supervision of someone who was telling him... Tell me again. I want to follow up on Judge Demont's question. What is the standard that you say was wrong here? As I understood it, it was this element that it must be prescribed for a legitimate medical purpose. You say that's wrong? No, the legitimate medical purpose standard has to be filled with some sort of fact-specific analysis. There's no definition of what... But doesn't Mr. Brown have to exercise some judgment as a nurse practitioner, especially when he's prescribing? When he's authorized to prescribe, and in prescribing, aren't there standards that he should abide by himself and not just say, I followed orders? Correct, but the question is, where does that standard come from? Where is he getting that standard? You said that the court gave the wrong standard. I asked you what the standard was, and you said, well, to see that the drug was used appropriately and that there's a urine test. And I'm saying, isn't that what Mr. Brown should have done? Well, the standard for a nurse practitioner isn't in the record because there was no evidence on that standard. What do you call the standard for a nurse practitioner in prescribing the drugs? The standard, I mean, I would continue to say is with reference to what he was being told was the correct standard. He can get that through education from... I'm not talking where he learned it. I'm asking what is the standard that a nurse practitioner has to abide by in prescribing drugs? That was what the government needed to offer evidence on. I'm asking you, as a matter of law, what is the standard? Standard for a nurse practitioner is practicing good medicine under the supervision of someone. It depends on the state. There has to be a difference between a nurse and a nurse practitioner. It seems like to me you are presenting a case that Mr. Brown was just a nurse and not a nurse practitioner who just followed instructions. The doctor says, go give him a shot. He doesn't. He doesn't think about the purpose of it at all. But this nurse practitioner is given a special status, can actually go and give medicine without that doctor even being anywhere around. He's been given a general authority to do it. And here's someone who's not... By the way, which charges are you relating to? Are you talking about distribution or conspiracy? Both, Your Honor. But, okay, to answer the first part of your question, that is not actually... Isn't there a little difference between the conspiracy basis and the distribution? One, the intent aspect of it, and in terms of how the agreement affects it on one end, and the conspiracy, and then the distribution. Well, if Mr. Brown didn't know that what he was doing was wrong, then it's hard to say how he intentionally agreed... In both instances, it seems to be your position is, he just did what he was supposed to do. And that is, whenever he was told to give someone some medicine, he gave it to them. That's the end of it. It doesn't matter if it came from Mr. Piconi or wherever, but this authority had to come from some higher person other than him. So once he got that, he did what he was told. I think it's a little more nuanced than that, Your Honor. Nuance it a little bit more for me beyond that. Then what more was he required? What duty beyond that did you assert he was required to have? Okay. In Virginia, there is a written practice agreement that a nurse practitioner... Not a nurse. The nurse practitioner must have with the supervising physician. And there is testimony from his supervising physician that they were in daily contact, that the... So you're not addressing a standard. The question that was asked to you is, what is the standard? You started your argument out with saying the government used the wrong standard. And you also said something I want to follow up on briefly, that this man didn't know that he was not... He didn't know of all these things, even though he's administering thousands of pills to a person that I think almost common sense would tell you that it's inappropriate. He knew that he had the safety net of the supervising physician. So he didn't think he had any independent duty as a medical practitioner? No. He thought he could hide under orders. It's sort of like the head of the government telling you to assassinate somebody. You say, I was just following orders. There, if you had evidence that the person knew that assassination was wrong, which you probably have, then that would be fine. Well, that's my point here, is doesn't the nurse practitioner have a duty, and a duty imposed by law in administering prescriptions and prescribing drugs to do something? Follow safe medical practices. Be sure that the patient needs it. Don't overprescribe. Ignore attempts to defraud him. If somebody comes and lies and he believes the person's lying, wouldn't he say, I can't administer this? Sure, of course. Okay, now what is the standard? And why is it different from any medical practitioner within the scope of the medicine being administered? This is why the good faith part of this is so important. Because what I'm trying to say is that because he was a nurse practitioner and had this agreement, he believed that as long as his supervising physician was saying this is within the bounds of medical practice, this was the basis for his education. You're basically saying I was following orders. When you're following orders and there's no evidence that you're following orders was outside the scope of practice. Well, that's the issue. If it's outside the scope of normal medical practice. And the government attempted to prove in this case, and the jury found that they did prove, that these prescriptions were out of bounds. There was no evidence, though, on those three charged prescriptions that those were outside the bounds of medical practice, of anyone's medical practice, doctor, Mr. Brown's. There was really no evidence at all on those three charged prescriptions. Was he involved in the prescriptions to honesty? There was evidence that he was. His name is on the prescription. But there was also evidence that Mr. Bocconi went in and forged Mr. Brown's name on prescriptions.  Were there any prescriptions that Mr. Brown signed to honesty? Yes. I mean, the record includes all of his prescriptions. Okay, let's not stick to the ones where something else. I mean, the jury can rely on anything to convict. And if there's some where he signed the prescriptions and they were out of bounds, I suggest those prescriptions to honesty were pretty clearly out of bounds. Don't you agree? I disagree, Your Honor, that in all circumstances the prescriptions to him were outside of the bounds of medical practice. There was evidence. That's not the standard of all of them. We're talking about where there's some from which the jury could have convicted him. No, we're talking about this one particular charged prescription. And there was evidence that Mr. Honesty had real pain problems, that all three of these patients who received those charged prescriptions had pain problems. There was no evidence on the specific charged prescription  Which prescription? The April 5th one? Yes, for each of those three charged prescriptions. Mr. Honesty did not testify about that prescription. And Mr. Dow did not testify about that specific prescription he received. And Mr. Rogers, who did not testify at the trial, obviously didn't mention it. The expert did talk about that prescription, the one to Rogers. She did not specifically mention, either in her expert report or at trial, the prescriptions to Dow or to Honesty. As for the prescription to Rogers, all she said in the report was, there is a prescription left. Wasn't Honesty the one that got thousands of pills and then returning some to the clinic? And they were found in the drawer? They were found in Mr. Bocconi's drawer. Four different types of medicines were being prescribed each time? Yes, and if you look at Mr. Honesty's testimony, what he was saying is, he had an agreement with Mr. Bocconi, not with Mr. Brown. It doesn't matter if Mr. Brown was dispensing them. And it was beyond the medical pale. Well, what the evidence actually showed was that Mr. Brown decreased Mr. Honesty's prescription. Then Mr. Bocconi came in, forged Mr. Brown's name on the prescription, and increased the dosage. What did Mr. Brown say? Mr. Brown said that he never prescribed outside the bounds of medical practice for any of the individuals. I don't agree particularly with Mr. Honesty referencing June 7, 2010. Is that correct? Yes, I believe that's correct. And doesn't the record... I'm sorry. I'm sorry. Just let me correct that. I don't believe that Mr. Honesty ever testified specifically about the date of the charge of prescription. All right, but Count 7 references June 7, 2010. There is no reference in Mr. Honesty's testimony to that date. Does that matter? Is there any evidence in the record about the medicine administered on that date? There are prescriptions issued on that date with the name Mr. Brown. But there was no testimony tying a specific prescription outside the bounds of practice to those prescriptions. And he did suffer from real pain conditions. The expert witness did offer that testimony, though. She did not testify about that specific prescription for OxyContin on June 7, 2010. She just made general observations that the practice was outside the bounds of a physician's practice. Mr. Honesty informed Mr. Brown that he'd suffered three overdoses and Mr. Brown continuing to prescribe the medicine. Along with testimony that prescribing to known addicts is not necessarily outside the bounds of medical practice from Dr. Currier, I believe, who was the supervising physician at the time the prescription that was charged was written. Okay, I think you have a little bit of rebuttal. Okay, I also have a sentencing argument if you have any questions on that. Yeah, well, I think your time's up now. Thank you. Try to catch it on rebuttal. Okay, Mr. Awanoka. Yes. Good morning, Your Honor. John Awanoka appearing on behalf of Mr. Paul Bacone. Let me start out, Judge Neumeier, by first answering the question that you posed with respect to the pill bottles that were found at the Chantilly Specialist Clinic with respect to Mr. Eric Arnesty. Well, I'm not sure. That's not a big deal. The idea was that Arnesty was in an arrangement where apparently he was returning pills, Oxycontin pills that he obtained through prescriptions. Isn't that right? That's what he claimed. However... There's evidence of it, but that isn't... You know, this record is pretty big. There's a lot of evidence in this case. And to make an argument that there's a lack of sufficient evidence from which the jury could have found a conspiracy in the various violations is a big task because you have to take on the hardest evidence against you. The jury can consider any of that evidence. It can disregard some, and we don't know what it considers. So the effort on your part and on Ms. Berman's part has to be to address all the evidence, the hardest evidence against you if you're going to make a sufficiency of the evidence argument. Yes, Judge. I'll refer the Court to page 474 and 475 of the Joint Appendix that addresses the fact that Special Agent Aaron Weider who actually sees the photograph that is Exhibit 36H that is the photograph that had the pill that you referred to with Eric Arnesty on it that specific bottle the Special Agent of 475, questions from Mr. Williams could not tell if the bottles contained any pills. There was subsequent testimony by Mr. Bacone that they are required to return their old prescriptions if they've been given new prescriptions. So when they are returned, there's a destruction law that we went through at the trial because I was trial counsel. That doesn't answer my question that I was directing. I did say, didn't they find the pills? But my question was, wasn't Mr. Arnesty, wasn't there testimony that he was returning pills to the clinic? He was required to return pills to the clinic before he's given new pills. Example, Judge, as his testimony showed, if you're giving 70 pills and then at some point Dr. March or Dr. Bowe or Nurse Practitioner Brown decides to change the level of the medications that you're taking, you are required as part of making sure that there's no diversion or that the patient is not given medication or selling it. You're required to bring it back. Why are you required to bring it back? Who required it? The clinic, Chantilly Clinic required that it be returned so that it is properly accounted for so that there's no diversion which is what the government claims in this case that was not being done. And then there's a destruction law that was entered or used in this case that shows that the medications are returned then destroyed before the doctor or nurse practitioner issues new medication. And you say there was evidence in this case to show that, that he returned them because he was supposed to for purposes of destruction because he was given another prescription? Yes, Kingdall testified as to how the process works. That's my memory from the trial. You know, that may be a take on it but I think the government is going to say that the evidence showed that there was a prescription of a large amount and in order to give him an increased amount, there was an agreement to give him some back so that the clinic could have some there. That's why he was given large numbers of pills, wasn't he? It depends on how you define how you define large numbers, Judge Niemeyer. Let me give you an example talking to the experts that we used in this case. When somebody gets a 4 mg Oxycontin, for example, for purposes of example, an individual then complains of continued pain. In order for you to increase the medication, you may be either given two 4 mg pills whereby you're taking two it may reflect that you're taking two so it looks like you're giving more medication. However, the milligram is actually what you control and not that the joint appendix is enormous in this case and if you go through the task of looking at each individual patient and individual increase that is talked about in this case, it is not the number of pills that controls, but the milligram. If you look on the joint appendix 590 579 to 583 and 592 to 593 even the doctors on X even the governments on X, but Dr. Hamill wrote conceded specifically what's to the effect that there's really no number that is set as something that one can say that this is the right number of medication or this is not the right number of medication as specifically appears on our brief on page 19. Let me ask you just to cut through this a little bit. Are you arguing that there's no evidence to convict insufficient evidence to convict Mr. Bacon? I will submit that there's insufficient evidence. Is that what you're trying to argue? In addition to other arguments, but let me start out by arguing that Dr. Hamill wrote a report and testimony should not have been voted on. Can you just answer my question first? Yes. Are you making an argument that the government didn't have sufficient evidence to convict in this case? Yes, judge. Yes, judge. Because you, judge, if you look at the entire record one thing that comes across is that people that testified but then not one of them said that Mr. Bacon signed the signature. Not one. The only person that claims medication was given to him Ms. Burnham just said Mr. Bacon forged Mr. Brown's signature. That's the claim that she makes. She represents Mr. Brown, but then you can go through this record, judge. Oh, that was the testimony of honesty. Honesty that Mr. Bacon forged. Judge, if you look at the transcripts Is that true? Answer that question. Was there evidence in that for Mr. Honesty that Mr. Brown Mr. Bacon forged Mr. Brown's signature? I don't recall sitting through that trial and hearing such testimony but I'll say that whatever the record indicates, but I don't recall Mr. Honesty saying that there was any forgery because specifically Did he say that Mr. Bacon directed Brown to sign the prescription? But then that's what was claimed. What happened when Mr. Brown testified? He said he was never directed by Mr. Bacon to sign anything. Dr. Marsh said he was never directed to sign or give anybody prescription. Dr. Correa also testified that she was never told or given any orders by Bacon because the government's essential argument is that Mr. Bacon distributed this narcotics by either talking the doctors into doing it or asking the doctors to do it on his behalf. But this is very central because it seems as though in the Joint Appendix when you look at page 334 there's some indication there from Honesty in terms of what is supposed to have been done and it seems there's one instance where I think I recall where he said that Brown had reduced his medication but Mr. Bacon took the prescription and forged Brown's name to increase the medication. That's what he testified to, whether or not it's true or not is his testimony. The problem with Honesty's testimony is like, apart from Mr. Bacon My question is, did he testify as such? On page 334 You said you were at the trial You would know whether or not he testified Did he testify like that? I just saw it on page 334 I just saw it on page 334 that he testified that he did sign Charles Brown's signature He? Who is he? He, meaning Mr. Bacon signed Charles Brown's signature But then the next question is Is it a question of fact? I mean, you may have a good point but now we're kind of getting into the Baylor wake up You've got some evidence here to support What's going on? Not if Dr. Brown identifies that signature Dr. Brown said he was the one that signed that particular prescription Look here, I've just been pointed out to a portion of the transcript This is of Honesty testifying Did you ever witness Paul Bacon signing prescriptions? Yes, I have Question, what name did you see him sign? Charles Brown Same evidence I will say that evidence in terms of the testimony from a witness but then the question then becomes when Mr. Brown took this turn he testified in this case he was shown the prescriptions he identified those prescriptions as prescriptions that he signed so Honesty saying that my client Mr. Bacon signed it is one thing but then Mr. Brown who testified on the oath said he was the one that signed those prescriptions Dr. Joel March also testified that he signed those prescriptions Never saw my client Mr. Bacon sign any prescription Honesty was the same individual that my client had to call the police on Honesty was the same individual that my client had to testify against The problem you've got is this is a jury trial It was a jury trial but then You're making an interesting argument I don't think I've heard that before You said you recognize this witness testified that but your witness is on the oath He testified he didn't sign it and therefore the jury couldn't possibly find it No You won't get anywhere with that Judge Wayne The argument that I'm making or the point that I'm trying to make is Mr. Honesty says one thing but the documentary evidence on the record which is the actual prescription in question was identified by Nurse Practitioner Brown as his signature So Honesty said He also said some places he didn't have his signature There were four of them Who said that? Brown On one occasion judge Look, one occasion is enough I'm telling you you've got to face the hard evidence not the easy evidence The testimony that went your way doesn't help you It's the testimony the government put in that inculcated your client You have to address Specifically I will address Well actually you threw a red light now and you'll have to reserve Ok, I guess I'll reserve I'll just say judge that the report from Hamill Roots should not have come in because it doesn't meet the American Medical Association standards Not one bit But I will address the other issues Alright Mr. Benner Good morning May it please the court My name is Michael Benneri I'm an assistant United States Attorney for the Eastern District of Virginia This case was about Paul Bacone operating a drug distribution business with the help the essential help of Nurse Practitioner Charles Brown If I might your honors I'd like to jump to addressing the sufficiency of the evidence with respect to the three substantive distribution counts against Charles Brown The court asked several questions about what is the standard for a Nurse Practitioner versus the standard for an MD I would argue that it's exactly the same standard And it's the same standard because in Virginia and other states where Nurse Practitioners are allowed to prescribe using an MD's license, they are standing in the shoes that the MD would stand in or at the MD at the medical practice prescribing Maybe you can help me on this It seems like to me it creates another element of proof on the part of the government that you have to show that it was not for those purposes I would think That is correct and it's consistent with our jury charge in this case But the argument on the other side is that he's not bound by that Then he becomes sort of like a layman And then you don't have to prove I'm trying to understand where does that go Maybe I'm misreading that But I see it on one hand as a benefit You didn't prove it But if you don't have to Because the argument is he's not a doctor He's not a physician So therefore he's a regular guy So he's just like Mr. Pagone You don't need to prove that Am I reading that wrong? No Judge Wynn I think you're reading it correctly However, because nurse practitioners in Virginia are allowed to issue prescriptions under an MD's license number That's what kicks in the element And certainly you could take Defendant Brown's argument to say that we proved too much because we took on that extra element but we did take on the extra element because it was abundantly clear and the jury found that these prescriptions were issued outside of the scope of medical practice But the statement is almost like that element really is something It's a higher level of proof from their perspective that you not only have to prove that it's medically necessary or whatever but you have to prove that it wasn't someone who ordered them to do it or who was a medical doctor I guess It wasn't within the scope of the things they were permitted to do That's correct and an MD would have that same good faith defense What was the evidence that Brown knew this was beyond the pale, these prescriptions on the counts Ms. Burnham says there's no evidence on those counts Yes Judge Niemeyer Simply put, the three substantive counts were instances where the medical records reflect that the prescriptions were either issued or directed or the patients were seen by Paul Bacone There was no medical visit whatsoever on the part of Nurse Practitioner Brown yet Brown signs the prescriptions Dr. Hamel-Ruth testified to give the jury a framework to view what's legitimate medical purpose. She testified that it was outside of the scope of legitimate medical purpose to issue these opiate pain medications without conducting any physical patient visit or seeing the patient at all. But even on top of that of course when you're dealing with Did you establish that Brown signed them? Yes. The prescriptions themselves are actually in the record, the originals But how do I know it's not Mr. Bacone's forgery? Well, Your Honor even even if they were forged Mr. Bacone and I would suggest that wasn't what the record reflected. There was evidence that Nurse Practitioner Brown would sign stacks of prescriptions brought in to him at the medical practice But even if he did there would still be sufficient evidence that Mr. Brown was aiding and abetting because he was he was assisting Paul Bacone who needed someone a teammate essentially, someone who's had a license to issue these prescriptions whose name could be put on the prescription because if a prescription went to the pharmacy with the name Paul Bacone She argues that he didn't know And I would argue that that's just simply against the weight of the evidence. If you go back and look at a single witness Eric Honesty as the court pointed out, he testified directly I think the question was something like who did you have the agreement with and his answer was it was with Charles Brown and Paul Page 339 of the Joint Appendix Additionally, there was other evidence that the two were working hand in hand together to distribute these drugs William Dahl who was the medical office director testified that once Dr. Match came on board and Dr. Match was the second supervising physician that was employed by Paul Bacone at Chantilly Specials when patients complained to Paul Bacone about Dr. Match cutting their medications the patients would be rescheduled for a visit with Nurse Practitioner Brown and the result was that they would be issued the same prescription that they were requesting not be cut So there is significant evidence that Brown full and well knew that he was acting outside of the scope. There were other patients who were Charles Brown's patients who testified that they would come into the practice as new patients through their entire time in the practice where their prescriptions were jumping up and up and up who was their treating person at Chantilly Specials. Not once did he conduct a physical examination of them at the practice So I think that all of that goes to support the jury's finding that he was well aware of what was going on. He was in the conspiracy fully and had the agreement directly with these drug addicts to get them the pills that they needed With respect to good faith I would like to address that and again I mentioned that Dr. Match was the second supervising physician. The first supervising physician was Dr. Carol Currier Both Carol Currier and Dr. Match testified that they did not approve of these prescriptions being issued, these incredibly large prescriptions to these people with obvious issues, addiction issues, diversion issues and I believe their testimony was that had they known that this was going on they would not have approved it. So there is no good faith defense here for Charles Brown because he did not have approval from his supervising physicians Let me move you just a little bit out of order and then you can come back This is a question I want to deal with on the sentencing Yes your honor Does the calculation of the drug quantity in that PSR include all of the prescriptions written by Mr. Brown for these patients? It includes all of the prescriptions written for select patients, not all of the prescriptions that Charles Brown issued for all patients of Chantilly and the reason in the PSR adopted by the district judge was that there was a record to demonstrate by a preponderance of the evidence that the standard of care was breached for those patients Those are patients who came in and certainly in the past they could have had medical problems but the record reflected that while they were at Chantilly specialists there was no legitimate basis upon which they could be issued any pills So these prescriptions are the ones that were written at the behest of Mr. Baccone and the ones that were not written for at the behest of Mr. Baccone Well I'm not sure that the inclusion by the probation office rose and fell on whether they were specifically issued at the behest of Baccone or whether these were patients that Charles Brown was seeing during the life of the conspiracy and he issued the prescriptions. I think that their inclusion in the sentencing amount rose and fell on whether there was any legitimate medical basis to issue the prescriptions There was a preponderance of the evidence found by the probation office adopted by the district court and certainly backed up by the record that none of the pills issued to the specific patients selected for inclusion had any medical purpose. These were pills issued to addicts and drug dealers in the hundreds and thousands of unit amount and so I would argue that they were correctly included Notably the sentencing guideline calculation that we're looking for at sentencing was a level 32 which would have resulted in a low end calculation of 121 months of course as you know your honors he was sentenced to 60 months at the end of the day and so with respect to with respect to sentencing if I could just close that loop the position of the government is that if there was and we can see that the record from the district court was exceedingly brief for each of the two defendants however we would argue that that the court can be confident that he in fact considered all of the sentencing arguments by both Bacone and Brown even if it was not as explicitly stated in the record as we would have liked to see because in the context of a well briefed and well argued sentencing hearing the sentence that he imposed for both Bacone and Brown were significantly below what the government requested, significantly below what the district court found the properly guidelines range was and actually closer certainly in Brown's case but also in Bacone's case closer to what the defendants themselves requested Brown requested a sentence of minimal incarceration and Bacone requested a light sentence and in the context of this drug distribution business which resulted in numerous overdose deaths very high guidelines range based on very high pill amounts that for Paul Bacone the sentence imposed 15 years certainly significant but much lighter than it certainly could have been and for Charles Brown his guideline range did go up to life it was 360 to life again and even if you there is a point in the sentencing argument where Mr. Bacone's counsel talks about a level 32 again because they're requesting essentially a fraction of a third of the number of pills that the probation department included which would bring it down to a level 32 again you're still dealing with a guideline range of at a low end of 121 months certainly with the leader enhancement that the district court found was appropriate for Paul Bacone I would argue that this court can have confidence that the district judge did actually consider the sentencing arguments in coming up with the appropriate sentence. Counsel if you read the paragraph in the pre-sentence report as I recall that discusses the four point leadership enhancement and you count the number of individuals named in that paragraph you don't come to five have you thought about that? Who are the five people? Well your honor if you're talking about people that are actually co-conspirators I would argue that you could easily get to five you certainly have Charles Brown you have I would submit Eric Honesty. No the PSR that paragraph explicitly excludes Mr. Honesty probation officer discounts Mr. Dow as well and even though those people are discounted I would argue that there was clear evidence by her partners that they were members of the conspiracy they were acting with these two men to get pills that they were then selling to others probation officer came out on the opposite and there's no discussion by the judge as you recall so there's no finding in the record as to what you just said is there I would have to specifically go back and look I know that the district judge was was economical with his on the record discussion at the sentencing argument and however I do believe that there the record has a preponderance of the evidence that there were far more than five other individuals involved even just counting not counting the patients even just counting other people at Chantilly specialists over whom Paul Bacone had exercise influence you have nurse practitioner brown you have I would I would argue both of the supervising physicians that Mr. Bacone brought in you have what you're pointing out is that the enhancement has the words or otherwise extensive correct and now you're making the argument that you don't need to be fixated on on five that is true as a fallback I would argue that there certainly is evidence in the record that there was far more than five but and they don't all need to be viewed as conspirators to qualify as the five but even outside of that when you're dealing with an enterprise involving this many patients traveling as far distances as they were even up to 13 hours it certainly would have been justified Dr. Frazier would be another one Melissa Lavoie who is the Medicare Biller I think there's clear evidence that she was acting at the direction of Bacone based on his own testimony that he brought her in as the Medicare Biller certainly we know that bills were submitted to Medicare that were false she would have gotten that false information because Paul Bacone was conducting the patient visits from public she acted at his at his bidding even if it wasn't completely knowingly as a co-conspirator so I would argue under either standard the record supports the imposition of the enhancement what is the evidence to support count nine against Bacone it's against both Bacone and Brown but I'm just interested in what the evidence against Bacone that's April 5th certainly your honor if I may just flip to it on my notes count nine dealt with Michael Rogers interesting counsel today points out that Michael Rogers didn't testify during a trial of course he was an overdose victim was long dead by the time our trial occurred because he had been over prescribed by Bacone and Brown the evidence was that that prescription was directed by Bacone and signed by Brown the prescriptions and evidence the medical notes of that April 5th 2010 visit indicate that the prescription was directed by Bacone of course if the jury finds that to be true he's guilty of distribution of drugs because he has no medical license and can't prescribe at all with respect to Brown what was the evidence that he directed that one it comes from a review primarily a review of his medical file and you can see in the medical file as it's discussed at some length in trial they had an electronic medical record system and so you actually could see the user in the system who was inputting changes to the prescription inputting the notes concerning the prescription and the notes associated with that visit indicate that it was Paul Bacone and if the jury found that to be the case that's sufficient that is sufficient evidence to find him guilty of distribution of controlled substances for that count of course Michael Rogers ends up coming back three days later on April 8th getting a new prescription which was far earlier than was scheduled and is found dead on his mother's couch of a drug overdose that same day he was traveling from Tennessee which does share a border with Virginia but certainly not with Chantilly Virginia you said there was more than one how many people died from overdose well there was there were counts in the indictment dealing with two overdose deaths Jonathan Heiser and Michael Rogers the jury ultimately found defendants I believe guilty of distributing the drugs actually not with respect to Jonathan Heiser but they did not find them responsible for the death resulting which would have been a sentencing enhancement presented to the jury in Dr. Hamill-Ruth's report there is a discussion of a number of additional patients who also died of drug overdoses but those were not specifically charged with substantive counts they were incorporated into the conspiracy count and so unless the court has additional questions thank you all right let's see who's next I guess you're next I'll address the sentencing arguments first because we didn't get to that last time the government is incorrect that there's no evidence there was a legitimate medical purpose for any of the prescriptions for those four individuals for example they all suffered from real pain conditions you can see that in the briefs and in the record so in addition to the fact that he ended up getting a below guidelines sentence is not that's completely irrelevant because the question is not whether the sentence ended up being within the guidelines range or not the question is was the process infected by this error and it's quite conceivable that the judge would have given him an even lower sentence had he started from a correctly calculated lower guidelines range and the failure to explain error is not harmless either because very nature of that error is that it's not susceptible to appellate review because you don't know what the judge was thinking what he considered or what he did not consider and the sufficiency of the evidence the government says that the evidence was that Mr. Brown didn't have approval but that's not the way the practice agreement worked he had approval as long as the physician wasn't telling him to stop prescribing or advising him that there was a problem so every time he wrote a prescription he tacitly had approval for those could he write a prescription for a thousand units of oxycontin say and give those to give those to the patient who said I hurt if he in good faith believed that that was acceptable medical practice then so he does have an independent duty to apply accepted medical practice when he's prescribing correct with again with respect to what he knows to be accepted practice which is in part defined by what he's being supervised and there's evidence that a lot of the patients he didn't actually physically examine at all to any assigned stacks of prescriptions there was also medical practice and prescribing drugs actually I believe that it was dr. Matt she testified that it is within the bounds of medical practice to not examine a patient every time you see them and the government's expert also find in her report that it perhaps it's her testimony I'm sorry but that it depends on the circumstance you don't just order tests to order tests you don't just perform brown was issuing these prescriptions without knowledge that he was feeding drug addiction record I think he whether he knew the patients were addicts or not it's not the same question as whether he believed that the was do you think brown knew when he was prescribing these drugs that he was feeding drug addiction no I think the record does show that he was perhaps a negligent nurse practitioner he could have followed up more he could have though it's hard to see how he was in daily contact with the supervising physician I mean I guess you could say he could have sought outside help from outside the practice or something but I mean customer comes in one day gets a prescription comes in a few days later gets another prescription and then that very same day overdoses you know compare your head and sand as to what's going on how long was he at that clinic two years two and a half years and when he started there he had no background in pain management okay I think it does you know there's things about it that are not great he might be negligent but the question is not it was he a bad nurse practitioner was he a negligent nurse practitioner the question is whether he had effectively ceased to be a medical professional at all and was just pushing drugs and the evidence just does not show that okay alright we have one more rebuttal of Mr. Iwanagi thank you Dr. Nehemiah with respect to Mr. Bacone I would like to shift gears and go into the sentence and argument the issues raised by Judge Flanagan are very relevant five or more people what we're doing by counting it could have been this person it could have been that person is basically we're speculating as Judge Nehemiah asked the panel I mean the argument before us specifically what is the issue before us isn't it immutability Judge the issue is the record indicates that we don't have five or more people for the role enhancement we cannot sit here and speculate what it should have been the specific five people should have been identified on the record for the purpose of the enhancement the fallback position doesn't even work because specifically the enhancement what if we had a business run by a mafioso that had 30 employees that he was directing you have to identify the 30 employees evidence has to show the sentencing judge has to identify the employees who were being directed just because an individual is an employee doesn't mean that they're being directed this enterprise this is a racketeering enterprise that has 30 employees my question is does the judge in sentencing does he have to identify the 30 employees or name at least five of them to get the enhancement could the evidence show that there were 30 and he could just leave it at that and issue the enhancement I will say that the record has to direct us to something that the judge is relying on we cannot speculate as to what number of people that were directed or managed within the group so you think that if the evidence was there were 30 people in a business and the judge doesn't say anything further about it, it's pretty well established there was 30 people that the defendant was directing that we're speculating I will say that it will be speculation because it has to be shown by preponderance of the evidence and preponderance of the evidence that's why you have a sentencing hearing that those issues are supposed to be fleshed out like Mr. Benari eloquently stated the issues were well briefed if the judge wanted to make that finding it should have been made on the record he adopted the presentence investigation report as is and then we're stuck with it in addition to that there's no specificity as to which medications or which number that are not for legitimate medical purpose that plays a number with the quantity of drugs in this case Dr. Hamil Roots and the government did not tell us how much of this medication was not for legitimate medical purpose and lastly the other point that I have is the issue with respect to the improper closing argument by the government as to the voluntariness of Mr. McCormick's appearance before the police officer to Special Agent Walker to take his fingerprint I'll submit that when you were told that you have something for you to show up and you on your own go over and then you're given something to sign after you get to the location that you went there voluntarily being advised that there's a grand jurisdiction pending is one thing showing up on your own to have it done and have it executed is something else Well you know there's a difference between a prosecutor vouching for the credibility or not of a witness and there's a different proposition of the government arguing that the evidence showed that somebody lied and this argument the government was pointing specifically to that testimony and making the argument that that was a lie. Now that can be counter argued but I'm not sure that on this record that was a vouching problem The only problem, not that it's vouching but then when the prosecutor then says that Mr. McCormick was on this court, the prosecutor had the I asked him specifically about whether he went there voluntarily and he said yes and then I'm supposed to rely on the evidence adduced for purposes of my closing argument. The prosecutor had a crack at Mr. McCormick They did not ask him that specific question In closing argument they bring up this issue of him having to show up pursuant to a grand jury subpoena. Now I'm relying on the fact because I was not previous counsel that there was some grand jury subpoena that was actually issued to him, served on him for the purpose of appearance. Come to find out after the fact and after the So your argument is that he was relying on evidence that wasn't in the record? I thought your argument was a vouching argument that he was giving his opinion that the person lied In addition to the fact that the government led us to believe that Mr. Boccon showed up at solicitation pursuant to a grand jury subpoena. The argument that I made before the jury was that he voluntarily showed up at the solicitation and was subsequently said. So based on those reasons I ask that this court not affirm the conviction in this case. You were court appointed? Yes. I'd like to recognize your service to the court. Thank you. Thank you. Alright, we'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Louise W. Flanagan